lml

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,          )
                                   )
                Plaintiff,         )
                                   )
        vs.                        )          Case No. 11-40018-JAR
                                   )
FRANK E. HOLLOWAY, III,            )
                                   )
                Defendant.         )
_____       )

MEMORANDUM AND ORDER
DENYING DEFENDANT'S MOTION TO SUPPRESS

This matter is before the Court on defendant Frank E. Holloway, III's Motion to Suppress
(Doc. 13) from evidence all items seized during the search of his residence on November 22,
2010, and Motion for Discovery (Doc. 14).  The government has responded to both motions, and
the parties have agreed to submit the motions on the briefs in lieu of an evidentiary hearing.
Based upon the government's representations, the lab reports requested by defendant have been
disclosed or will be disclosed upon receipt, and thus the Motion for Discovery is moot.  For the
reasons stated in detail below, the Motion to Suppress is denied.

I.      Background

On November 22, 2010, a search warrant was issued in the Kansas District Court, Third
Judicial District, Shawnee County, Kansas, for a specific address on Irvingham Street in Topeka,
Kansas.  The search warrant authorized seizure of the following items: "Firearms, Shell casings,
Projectiles, Ammunition, Gun cases, holsters, Gun Cleaning kits, Trace Evidence including but
not limited to blood, Marijuana, and other illegal controlled substances, Drug Paraphernalia, Pay

sheets, large amounts of currency, Cell phones." The warrant also authorized the search of "all persons present during the execution of this Search Warrant."

During the execution of the search warrant, defendant was found to be present and residing at the Irvingham Street residence, and officers of the Topeka Police Department ("TPD") located a Walther, Model P22, .22 caliber pistol, bearing serial number L232754, in defendant's dresser. Two plastic baggies containing suspected crack cocaine and a set of digital scales were found in the same dresser as the firearm. Defendant was arrested at the time of the search and subsequently charged in this case with one count of felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(a)(2).

The search warrant was issued based on an affidavit submitted by Detective Daryl Ludolph with the TPD, and set forth the following facts. The warrant was issued in connection with the investigation of the murder of Vincent Lambert, who was shot and killed in a robbery on November 20, 2010, at a residence on Winfield Avenue in Topeka. Police officers responded to the scene of the shooting that date and questioned witnesses who said that at least two black males had robbed the house, one with a chrome semi-automatic handgun. One witness said one male said something to the effect of, "I'm going to get you," and another witness said a male pointed a gun at her and wanted to know "where the money is." A shootout between the males and the victim ensued. The investigating officer said while he was at the crime scene, he detected the odor of marijuana. During the search of the residence on Winfield Avenue, approximately five pounds of marijuana, $5000 in United States currency, and two firearms were seized. Additionally, in the area of the shooting, the police seized a .22 caliber casing, .380 caliber casings and a 9mm casing.

The next day, a tip about the robbery was called into Crime Stoppers, stating that two black males, a black female and a white female at a duplex in southeast Topeka had been talking about a robbery, and that one of the black males had been grazed by a bullet during the robbery. The tip also stated that a red van with a specific license plate number was involved in the robbery. Lambert's mother had told officers that after the shooting, when she looked out the side door window she saw the two suspects run and get into a red van or SUV. After running the license plate number given in the tip, the van came back registered to Kathryn Skirvin. The police unsuccessfully tried to locate the van at the duplex address given in the tip as well as the address where the van was registered. Police located and stopped the van later that night. Two black males, Aaron Lofton and Christopher Love, were in the van. Lofton had two warrants and was arrested, and mentioned during questioning that he had heard of a robbery and that "Eddie and Ebony" did it.

Later on November 21, 2010, when Skirvin heard that her van had been towed and that she was wanted for questioning, she voluntarily went to the Law Enforcement Center. During her interview, Skirvin identified "Eddie and Ebony" as Eddie Gordon and Ebony Clark. Skirvin said she was at the duplex when Gordon and Clark wanted her to drive them to "get some green," meaning weed. Detective Ludolph attested that from his experience and knowledge, this was street talk for purchasing marijuana. A reluctant Skirvin gave in and drove Gordon, Clark and Gordon's brother, Ira Gordon, to the location where Lambert was murdered. Skirvin said that Eddie Gordon told her to wait nearby for them because they were going to use the pretense of purchasing marijuana to gain entry to the house, but were going to "take their shit." According to Skirvin, Ebony Clark waited in the car with her and kept her hand in her purse,

making Skirvin think Clark had a gun because Skirvin had seen Clark with a weapon before.

Skirvin thought Clark did not display a gun, but kept her hand in her purse to scare Skirvin so

that she would not drive away and leave Eddie and Ira Gordon stranded.  Skirvin also stated that

she was told if she did not drive them, or if she told anyone about what happened, they would

kill her and her son.

When Skirvin saw Eddie and Ira Gordon running down the street, she drove and picked

them up.  While in the van, Eddie Gordon made a comment about being shot, then took off his

shirt, and a gunshot wound was discovered.  Skirvin then drove back to the duplex, which is the

same location given in the Crime Stoppers tip.  Eddie's wound was treated at the duplex, then Ira

Gordon, Eddie Gordon and Ebony Clark eventually left, with Eddie and Ebony leaving together.

Skirvin stated the last known location of Eddie and Ebony was the residence on Irvingham

Street.  She also remembered seeing Eddie with three guns and Ira Gordon with three cell phones

that they stole from the residence on Winfield Avenue.

## II.    Discussion

### A.    Probable Cause

Reviewing courts give "great deference" to the issuing magistrate's determination of

probable cause.[1]  "If the judge only considered a supporting affidavit in issuing the warrant, the

reviewing court likewise determines the existence of probable cause for the warrant exclusively

from the supporting affidavit's four corners."[2]  The court's duty is to ensure that the issuing

magistrate had a "substantial basis" for concluding that the affidavit in support of the search

---

[1]*United States v. Finnigin*, 113 F.3d 1182, 1185 (10th Cir. 1997).

[2]*United States v. Harvey*, 514 F. Supp. 2d 1257, 1259 (D. Kan. 2007) (citations omitted).

warrant established probable cause.[3]  "The task of the issuing magistrate is simply to make a

practical, common-sense decision whether, given all the circumstances set forth in the

affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a

particular place."[4]  "The test is whether the facts presented in the affidavit would 'warrant a man

of reasonable caution' to believe that evidence of a crime will be found at the place to be

searched."[5]  Thus, only a probability and not a prima facie showing is the standard for probable

cause.[6]

In *Illinois v. Gates*,[7] the Supreme Court abandoned the requirement that an officer set

forth an informant's reliability in the affidavit.  The courts are to determine an informant's

credibility or reliability and basis of knowledge under a flexible totality of the circumstances

standard.[8]  "Veracity and a basis of knowledge are not, however, rigid and immovable

requirements in the finding of probable cause.  A deficiency in one element may be compensated

for 'by a strong showing as to the other, or by some other indicia of reliability.'"[9]  Although

first-hand observation is accorded greater weight,[10] "hearsay, even multiple hearsay, may be used

---

[3]*United States v. Nolan*, 199 F.3d 1180, 1182 (10th Cir. 1999) (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).

[4]*Id.* (citing *Gates*, 462 U.S. at 238).

[5]*Id.* (citing *Texas v. Brown*, 460 U.S. 730, 742 (1983)).

[6]*Id.* (citing *Gates*, 462 U.S. at 235).

[7]462 U.S. 213, 238 (1983).

[8]*United States v. Smith*, 63 F.3d 956, 961 (10th Cir. 1995), *judgment vacated on other grounds*, 516 U.S. 1105 (1996).

[9]*United States v. Corral*, 970 F.2d 719, 727 (10th Cir. 1992) (quoting *Gates*, 462 U.S. at 233).

[10]*Id.*

to establish probable cause for a search warrant."[11]

Defendant argues the affidavit lacks probable cause on three grounds: (1) nothing in the affidavit supports Ms. Skirvin's allegation that the shooting suspects' last known location was the defendant's residence; (2) the affidavit does not address Ms. Skirvin's veracity, reliability, or the basis for her knowledge; and (3) the affidavit doesn't support the authorization of the seizure of the items listed in the search warrant.  The Court addresses each argument in turn.

### *Nexus*

The Court finds that the district court properly authorized the warrant as having been based on probable cause.  The Tenth Circuit has adopted the general rule that probable cause requires a "nexus between [the contraband to be seized] or suspected criminal activity and the place to be searched."  Probable cause to search a location does not depend on direct evidence or personal knowledge that contraband is located there.[12]  The affidavit need not aver that criminal activity actually occurred in that location.[13]  It is enough when the affidavit established a "nexus between the objects to be seized and the place to be searched" from which "a person of reasonable caution" would "believe that the articles sought would be found" there.[14]  This nexus "may be established through . . . normal inferences as to where the articles sought would be

---

[11]*United States v. Hogan*, 933 F. Supp. 1008, 1013 (D. Kan. 1996) (citing *United States v. $149,442.43 in U.S. Currency*, 965 F.2d 868, 874 n.3 (10th Cir. 1992)).

[12]*United States v. Hargus*, 128 F.3d 1358, 1362 (10th Cir. 1997), *cert. denied*, 523 U.S. 1079 (1998).

[13]*United States v. Harvey*, 514 F. Supp. 2d 1257, 1261 (D. Kan. 2007) (citing *United States v. $149,442.43 in U.S. Currency*, 965 F.2d 868, 874 (10th Cir. 1992)).

[14]*Hargus*, 128 F.3d at 1362.

6

located."[15]

The Court finds that the affidavit establishes a sufficient link between the defendant's residence and the described criminal activity.  When viewing the totality of the circumstances, Detective Ludolph's affidavit provided more than sufficient evidence for the judge to make a common sense determination that a fair probability existed that evidence of Lambert's murder could be found at defendant's residence on Irvingham Street.  Moreover, as the government summarizes in detail, the reliability of the evidence was established by the fact that consistent information was developed from multiple, independent sources.  The Crime Stoppers tip stated that a red van with a specific license plate number was involved in a robbery, which corroborated the statement of the victim's mother that she saw the shooting suspects get into a red vehicle outside of her house after the robbery.  This was further corroborated when the red van with the license plate specified in the tip was located, and its owner, Skirvin, verified its involvement with the shooting when she was forced by the suspects to drive them in the red van to the location of the shooting and to wait for them while they finished their business inside. Skirvin further stated that she had driven the suspects to the shooting location from the duplex and returned to the duplex afterwards, corroborating the Crime Stoppers tip about the duplex. Skirvin also said that Eddie Gordon was injured in the crime, information also provided in the Crimes Stoppers tip.  It is reasonable that Gordon, who had suffered a gunshot wound, might have been at his last known location identified by Skirvin as the Irvingham Street residence, two days after his injury.  This explanation and correlation of the facts provides a reasonable inference that probable cause existed.

---

[15]*Harvey*, 514 F. Supp. 2d at 1261 (quotation omitted).

### *Skirvin's Veracity, Reliability and Basis of Knowledge*

In *Gates*, the Supreme Court held that veracity, reliability and basis of knowledge are "highly relevant" as to whether a tip can support probable cause.[16]  Veracity concerns whether there is reason to believe that the informant is telling the truth,[17] including whether he faces criminal charges or whether his statement is against his own penal interest.  However, "when there is "sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant."[18]  Reliability determinations entail inquiry into whether the informant has provided accurate information in the past.[19]  "As for basis of knowledge, a firsthand observation is entitled to greater weight than secondhand information."[20]  Veracity, reliability and basis of knowledge are "intertwined,"[21] and are factors to be evaluated in determining whether the affidavit creates "a fair probability that contraband or evidence of a crime will be found in a particular place" on consideration of the totality of the circumstances.[22]  Thus, a deficiency in one factor may be compensated for by a strong showing of another or by other indicia of reliability.[23]

---

[16]*Illinois v.Gates*, 462 U.S. 213, 230 (1983).

[17]*United States v. Quezada-Enriquez*, 567 F.3d 1228, 1233 (10th Cir. 2009) (citing *Gates*, 462 U.S. at 227).

[18]*Id.* (quoting *United States v. Artez*, 389 F.3d 1106, 1111 (10th Cir. 2004)).

[19]*Id.* (citing *United States v. Corral*, 970 F.2d 719, 727 (10th Cir. 1992)); *see also Gates*, 462 U.S. at 243-44.

[20]*Id.* (citing *United States v. Tuter*, 240 F.3d 1292, 1297-98 (10th Cir. 2001)).

[21]*Id.* (citing *Gates*, 462 U.S. at 230).

[22]*Id.* (citing *Gates*, 462 U.S. at 238).

[23]*Id.*

The Court finds that Skirvin's veracity and basis of knowledge are demonstrated in the affidavit.  Skirvin admitted to her involvement in the robbery, which is against her own penal interest, and her information corroborated the information already known from the shooting victim's mother and the Crime Stoppers tip.  Skirvin's basis of knowledge was firsthand experience.  The lack of any history of accurate information from Skirvin is compensated for by the corroboration from other sources.

### *Particularity*

Finally, the Court finds that the affidavit satisfies the Fourth Amendment requirement that warrants describe both the place to be searched and the things to be seized with particularity.[24]  The search should be "confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause."[25]  Defendant argues that the warrant did not authorize law enforcement officers to search defendant's house, and nothing in the affidavit supports a search and seizure of the items listed in the warrant.  In this case, the search warrant authorized officers to search for and seize: firearms, shell casings, projectiles, ammunition, gun cases, holsters, gun cleaning kits, trace evidence including but not limited to blood, marijuana and other illegal controlled substances, drug paraphernalia, pay sheets, large amounts of currency, and cell phones.  The warrant also authorized the search of all persons present during its execution.

Contrary to defendant's argument, the items authorized for seizure have factual ties to the

---

[24]*United States v. Brown*, 984 F.2d 1074, 1077 (10th Cir. 1993) (citing *Stanford v. Texas*, 379 U.S. 476, 485 (1965)).

[25]*Id.* (quoting *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985)).

murder of Lambert and circumstances surrounding the crime.  Specifically, the suspects were involved in a shootout with Lambert and shell casings were found at the scene of the murder; Skirvin said Eddie had three guns in his possession when he got back into the red van after the robbery; Skirvin said Eddie was wounded in the shootout, as corroborated by the Crime Stoppers tip; Skirvin said Eddie's last known location was defendant's residence, where there might be blood evidence from his wound; Skirvin said the suspects made her drive to the residence where Lambert was murdered to "get some green," and Detective Ludolph smelled marijuana at the scene of the shooting; $5000 was found at the scene of the murder; a witness said one of the suspects wanted to know "where the money is" during the robbery; and Skirvin said that Ira Gordon had three cell phones in his possession when he got back into the red van after the robbery.  Defendant's motion to suppress evidence is denied.

### B.    Good Faith Doctrine

Even assuming that the affidavit did not support probable cause, the Court upholds the search based on the good faith exception under *United States v. Leon*.[26]  The good faith doctrine evolved because "[w]hen police officers act in good faith and reasonable reliance on a search warrant, the evidence obtained during the search should not be suppressed even if the warrant was lacking in probable cause."[27]  This doctrine protects "the exclusionary rule's purpose of deterring improper police action, rather than punishing errors made by the magistrates."[28] Because searches approved by a warrant "are favored," a "magistrate's determination that

---

[26]468 U.S. 897 (1984).

[27]*United States v. Lora-Solano*, 330 F.3d 1288, 1294-95 (10th Cir. 2003) (citing *Leon*, 468 U.S. at 913).

[28]*United States v. Gonzales*, 399 F.3d 1225, 1229 (10th Cir. 2005) (citing *Leon*, 468 U.S. at 916).

probable cause exists is entitled to great deference."[29]  Similarly, because "officers are generally

not required to second-guess the magistrate's decision in granting a warrant, . . .  evidence

obtained pursuant to a warrant that is later found to be defective is not properly excluded when

the warrant is relied on by the officers in objective good faith."[30]  "In answering this question,

the court should consider all of the circumstances and assume that the executing officers have a

'reasonable knowledge of what the law prohibits.'"[31]

There are four exceptions to reliance on the good faith doctrine: (1) where the judge

issued the warrant on a deliberately or recklessly false affidavit; (2) where the judge abandoned

his neutral and detatched judicial role; (3) where the affidavit is so lacking in indicia of probable

cause that it would be unreasonable for the officer to rely on it; and (4) where the warrant is so

facially deficient and fails to particularize that an officer cannot reasonably believe it to be

valid.[32]

Defendant invokes only the third exception, arguing that the affidavit is "so lacking in

probable cause that the search warrant cannot be saved by the good faith exception."  The Court

disagrees, and finds that Detective Ludolph acted reasonably and in good faith because the

affidavit in support of the warrant contained sufficient indicia of probable cause.  There is no

evidence that law enforcement knew of and disregarded any false information, nor does

defendant allege that any of the information was false, that the judge acted improperly or that

---

[29]*Id.* at 1228-29.

[30]*Id.* (citing *Leon*, 468 U.S. at 916).

[31]*United States v. Riccardi*, 405 F.3d 852, 863 (10th Cir. 2005).

[32]*Leon*, 468 U.S. at 923.

law enforcement could not believe the affidavit was valid upon execution.  As set forth above, the affidavit in this case provided adequate probable cause in light of the totality of the circumstances.  The corroboration of facts throughout distinguishes this affidavit from the wholly conclusory "bare bones" affidavits condemned by the Supreme Court.[33]  A warrant based upon the information supplied in this case to the judge would not have been recognized by a reasonably well-trained officer as illegal.  Accordingly, Detective Ludolph's belief in the legal validity of the warrant was objectively reasonable, and the case falls within the good faith exception of *Leon*.

     **IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion to Suppress (Doc. 13) is DENIED; defendant's Motion for Discovery (Doc. 14) is also DENIED as moot.

     **IT IS SO ORDERED.**

Dated: August 1, 2011

                                      S/ Julie A. Robinson

                                      JULIE A. ROBINSON
                                      UNITED STATES DISTRICT JUDGE

---

[33]*Gates*, 462 U.S. at 239.

12